IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge S. Kato Crews**

Civil Action No. 20–cv–03684–SKC

B.M.G.,

        Plaintiff,

v.

KILOLO KIJAKAZI,[1] ACTING COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

## ORDER

---

Plaintiff brings this action pursuant to the Social Security Act, 42 U.S.C. 405(g), seeking judicial review of a final decision by Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ["Commissioner," or "Defendant"], denying his applications for disability insurance benefits and supplemental security income. (Doc. No. 1.) Plaintiff has filed an Opening Brief, the Commissioner has responded, and Plaintiff has replied. (["Opening Brief"], Doc. No. 15; ["Response"], Doc. No. 16; ["Reply"], Doc. No. 17.) The Commissioner has also filed the Administrative Record. (Social Security Administration Record ["AR"], Doc. No. 14.) After carefully analyzing the briefs and the administrative record, the court

---

[1] This lawsuit was initially filed against Andrew Saul, who was then the Secretary of the Social Security Administration. (*See* Doc. No. 1.) Pursuant to Federal Rule of Civil Procedure 25(d), Mr. Saul's successor, Kilolo Kijakazi, is "automatically substituted" as Defendant. Fed. R. Civ. P. 25(d).

**REVERSES** the Commissioner's final decision, and **REMANDS** the case for further proceedings consistent with this Order.

## BACKGROUND[2]

Plaintiff was born on April 28, 1971; he was thirty-four years old on the alleged disability onset date. (AR 139.) He speaks English, has a high school diploma, and has taken two semesters of community college. (AR 170, 172, 2921-22.) His employment history includes positions as a construction laborer, a salesclerk, a sandwich artist, a screen printer, and a store manager. (AR 173.)

On November 14, 2011, Plaintiff applied for disability insurance benefits, pursuant to Title II of the Social Security Act ["the SSA"], and for supplemental security income, pursuant to Title XVI of the SSA. (AR 139-46.) In both applications, Plaintiff claimed that he had been unable to work, since August 1, 2005, due to "malabsorption," "back injury," "neck injury," "chronic pancreatitis," "chronic gastritis/peptic ulcer disease," "chronic anemia," "chronic pain," "diabetes," "esophygeal [sic] varices," and "arthritis." (AR 167, 171.) The Commissioner denied Plaintiff's applications on January 26, 2012. (AR 56-86.) Plaintiff then successfully requested a hearing before an administrative law judge ["ALJ"], which took place on December 7, 2012. (AR 32-55.) On December 18, 2012, the ALJ issued a written decision denying benefits, and on April 14, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1-31.)

---

[2] The following background focuses only on the elements of Plaintiff's history that are relevant to the court's analysis.

Plaintiff thereafter filed a *pro se* complaint in federal court, seeking review of the Commissioner's decision, and on September 10, 2015, the court reversed and remanded the case, pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings. (AR 2979-87.) A second hearing was then held before a different ALJ, who then issued a written decision, on November 18, 2016, again denying Plaintiff's claims for benefits. (AR 2992-3017.) The Appeals Council then granted Plaintiff's request for review of the ALJ's 2016 decision, and on July 6, 2018, it remanded the case back to the ALJ for a new hearing. (AR 3018-24.) A third hearing was then held, on December 4, 2019, before ALJ Debra L. Boudreau. (AR 2886-2916.) Plaintiff appeared and testified at the hearing, accompanied by his attorney. (AR 2886, 2889-96.) The ALJ also heard testimony from a medical expert, Dr. Gilberto Munoz, as well as a vocational expert. (AR 2897-2916.) Medical opinions were also provided by a treating physician, Thomas Fisher, M.D., and a non-examining state agency physician, Ammie Marvelli, M.D. (AR 2668-70, 4650-58.)

At the 2019 hearing, the ALJ heard testimony from Plaintiff regarding his present condition. Plaintiff testified that he suffers from longstanding bilateral neuropathy in his hands and feet. (AR 2894.) He reported that the neuropathy initially manifested as constant "numbness and tingling" with only "intermittent" pain. (AR 2910.) Plaintiff testified that, over a period of years, the pain "gradually" became "worse and worse and worse." (*Id.*) Plaintiff further testified that he suffers from a debilitating neck impairment, which came about after he broke his neck in February 2009, and for which he was undergoing radiofrequency ablation treatment, on a yearly basis. (AR 2889-90, 2894-95.) In addition, Plaintiff reported a history of diabetes and chronic

pancreatitis, arising from alcohol abuse. (AR 2895.) However, Plaintiff told the ALJ that he had

not consumed alcohol since 2009, aside from one instance in 2013. (*Id.*)

Plaintiff testified that he presently works, on a part-time basis, as a machining technology

tutor at a nearby community college, a position which he has held since 2015. (AR 2891-94,

2910-11.) Plaintiff told the ALJ that, in that role, he teaches students how to operate lathes,

though he denied ever working with the machines himself. (AR 2891-92.) He testified that, due

to his neuropathy, he must take frequent breaks at work to elevate his feet. (AR 2911.) Plaintiff

also reported some difficulty writing and typing, due to the fact that his hands "cramp up and

lock up." (*Id.*) Plaintiff told the ALJ that he currently lives with his nineteen year-old son, who

attends the same community college at which he tutors. (AR 2893.) Plaintiff testified that he

regularly drives his Dodge truck without apparent difficulty, except when it is cold, which

aggravates the neuropathy in his hands. (AR 2892-93.)

On January 7, 2020, the ALJ issued a written decision in accordance with the

Commissioner's five-step, sequential evaluation process.[3] (AR 2856-68.) The ALJ determined,

---

[3] The five-step sequential analysis requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition that met, or equaled, the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988); *see also McCrea v Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004) (observing that the same five-step sequential analysis applies to eligibility determinations for disability insurance benefits and supplemental security income). It is well-settled that, under this analysis, the claimant has the burden to establish a *prima facie* case of disability at steps one through four. *Id.* at 751 & n.2. The burden then shifts to the Commissioner, at step five, to show that the claimant retains sufficient residual functional capacity ["RFC"] to perform work in the national economy, given his age, education, and work experience. *Id.* A finding that a claimant is disabled, or not disabled, at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity

at step one, that Plaintiff had not engaged in substantial gainful employment since August 1, 2005, the alleged disability onset date. (AR 2858 ¶ 2.) At step two of her analysis, the ALJ found that Plaintiff suffered from the following severe impairments: "diabetes mellitus type I with polyneuropathy; history gastritis; and degenerative disc disease of the cervical spine, status post cervical fracture (as of February 2009)." (AR 2859 ¶ 3.) The ALJ also found that Plaintiff suffered from several non-severe impairments, including a history of alcohol-related pancreatitis, alcohol abuse, shoulder sprain, bilateral carpal tunnel syndrome, pulmonary nodules, coronary artery disease, anxiety, and depression. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 2861 ¶ 4.)

Prior to reaching step four, the ALJ assessed Plaintiff's residual functional capacity ["RFC"], and found him capable of sedentary work, subject to the following limitations:

[T]he claimant can lift and/or carry 10 pounds. The claimant can sit for 6 hours in an 8-hour workday and stand and/or walk for 2 hours in an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds. The claimant cannot work at unprotected heights, cannot drive commercially, and cannot operate hazardous machinery.

(AR 2862 ¶ 5.)

In establishing this RFC, the ALJ evaluated Plaintiff's subjective allegations of pain, the objective medical evidence, and the opinion evidence. (AR 2862-66.) The ALJ determined that, while Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms, his testimony regarding the intensity, persistence, and limiting effects of his

---

for at least twelve consecutive months. 42 U.S.C. § 423(d)(1)(A), (2)(A); *see Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

conditions was "not entirely consistent with the medical evidence and other evidence in the record." (AR 2862-63.) In making that determination, the ALJ first reviewed the objective medical evidence relating to Plaintiff's gastritis, diabetes, neuropathy, and neck issues, which contained numerous unremarkable findings. (AR 2863-64.) The ALJ determined that Plaintiff's subjective allegations of pain were "inconsistent" with this evidence. (AR 2864.) In addition, the ALJ discussed the medical opinion evidence, first giving "great weight" to the opinion from testifying medical expert, Gilberto Munoz, M.D., because it was consistent with, and supported by, other evidence within the record. (AR 2865; *see* AR 2896-2908.) The ALJ also noted that Dr. Munoz is a "recognized expert with the [SSA]" who "had access to the entire record along with the claimant's testimony." (*Id.*) The ALJ next assigned "limited weight" to the 2011 opinion from a treating prison physician, Thomas Fisher, M.D., because certain portions of the opinion were "internally inconsistent," inconsistent with other evidence within the record, and inconsistent with Plaintiff's own hearing testimony. (*Id.*; *see* AR 2668-70.) The ALJ also observed that certain portions of Dr. Fisher's opinion were framed as "mere prohibitions or suggestions regarding abilities," as opposed to "the claimant's maximum abilities." (AR 2865.) Finally, the ALJ accorded "partial weight" to the 2019 opinion from non-examining state agency physician, Ammie Marvelli, M.D., because certain portions of the opinion were "inconsistent with the opinion of Dr. Munoz who had access to the full record, including the claimant's testimony," and because other portions of the opinion were "not supported" by the objective medical evidence. (AR 2866; *see* AR 4650-58.)

At step four, the ALJ determined, based on the vocational expert's testimony, that Plaintiff was unable to perform any past relevant work. (AR 2866 ¶ 6.) However, at the final step

of her analysis, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," based on his age, education, work experience, and residual functional capacity. (AR 2866-76 ¶ 10.) The ALJ determined that Plaintiff would be able to perform such jobs as a telephone salesperson, a maintenance dispatcher, or an appointment clerk. (*Id.*) For that reason, the ALJ concluded that Plaintiff was not under a "disability," as defined by the SSA, and denied his applications for benefits. (AR 2867 ¶ 11.) That denial prompted Plaintiff's renewed request for judicial review. (Doc. No. 1.)

## STANDARD OF REVIEW

In social security disability cases, the court's review is limited to determining whether: (1) substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner's decision comports with relevant legal standards. *Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017); *see generally* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted); *accord Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). Any conflict in the evidence is to be resolved by the ALJ, and not the court. *See Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000) ("We will not reweigh the evidence."). A finding of "no substantial evidence" is proper only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Further, "if the ALJ failed to

apply the correct legal test, there is ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## ANALYSIS

Plaintiff raises two main issues on his present appeal. Plaintiff argues, first, that the ALJ erred at step five of the sequential evaluation process, by finding that he had the ability to perform the jobs of telephone salesman, maintenance dispatcher, and appointment clerk, all of which are categorized by the SSA as semi-skilled positions. (Doc. No. 15 at 11-16.) Plaintiff contends that this amounted to reversible error, because "there is no evidence" that he possesses "the skills necessary to perform those jobs." (*Id.* at 12.) In his second point of contention, Plaintiff argues that the ALJ improperly evaluated his credibility and subjective complaints of pain, particularly with regard to his functional limitations caused by diabetic neuropathy. (*Id.* at 16-25.) On this issue, Plaintiff makes two arguments: (1) that the ALJ did not adhere to the proper framework to analyze his allegations concerning diabetic neuropathy; and (2) that the ALJ's findings were not supported by substantial evidence. (*Id.*) The Commissioner insists, however, that the ALJ properly considered the entire evidentiary record, and followed the applicable law, in determining that Plaintiff is not disabled. (Doc. No. 16 at 10-19.)

### I. Step Five Analysis

The court begins with Plaintiff's challenge to the ALJ's step five determination. Plaintiff argues that the ALJ erred at step five of the sequential evaluation process, by concluding that there were a significant number of jobs in the national economy that he was capable of performing. (Doc. No. 15 at 11-16.) Plaintiff contends, specifically, that the ALJ improperly found him capable of performing semi-skilled work, despite there being "no evidence" within the

record that he presently has the skills necessary to do such work. (*Id.* at 11-12.) Plaintiff stresses that neither the ALJ, nor the vocational expert, made a finding that he possesses skills that are transferable to sedentary work. (*Id.*) He contends that, in the absence of such a finding, he possesses "the same vocational profile as an unskilled worker." (*Id.* (citing 20 C.F.R. § 404.1565(a) ("If you have acquired skills through your past work, we consider you to have these work skills unless you cannot use them in other skilled or semi-skilled work that you can now do. If you cannot use your skills in other skilled or semi-skilled work, we will consider your background the same as unskilled.").)

In her written decision, the ALJ concluded that Plaintiff's severe impairments prevented him from returning to past relevant work, and found that those impairments also precluded him from performing the full range of sedentary work. (AR 2866-67 ¶¶ 6, 10.) As such, the ALJ was required to identify particular jobs that Plaintiff could perform with his particular non-exertional limitations. *Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992); *see also Campbell v. Bowen*, 822 F.2d 1518, 1522 n.2 (10th Cir. 1987) ("Where nonexertional impairments are also present, the grids[4] alone cannot be used to determine the claimant's ability to perform alternative work."); *Allen*, 357 F.3d at 1143 (holding that the presence of a material limitation beyond those encompassed within a given RFC precludes summary invocation of a grid rule to dispose of a disability claim). In this case, the ALJ sought to obtain such proof from the vocational expert, and had the vocational expert identified unskilled jobs that Plaintiff could perform, "the ALJ could readily have concluded [Plaintiff] was not disabled on this basis." *Rice v. Colvin*, No. CIV-

---

[4] The "Medical Vocational Guidelines" are colloquially referred to as the "Grids." *Allen v. Barnhart*, 357 F.3d 1140, 1143 (10th Cir. 2004).

12-105-SPS, 2013 WL 1286186, at *2 (E.D. Okla. Mar. 26, 2013). However, at the 2019 hearing, the vocational expert identified only semi-skilled jobs. (AR 2914.) Therefore, the ALJ was required to determine whether Plaintiff could, in fact, perform those semi-skilled jobs, *i.e.,* "whether he had any skills transferable to [those] jobs." *Rice*, 2013 WL 1286186, at *3.

"An ALJ can find a claimant's acquired skills are transferrable to other jobs 'when the skilled or semi-skilled work activities the claimant did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.'" *Dikeman v. Halter*, 245 F.3d 1182, 1185 (10th Cir. 2001) (quoting C.F.R. § 404.1568(d)(1)). Importantly, the Commissioner bears the burden to prove that the claimant possesses such transferable skills. *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). Thus, "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited" within the ALJ's written decision. SSR 82-41, 1982 WL 31382, at *7 (Jan. 1, 1982).

At the 2019 hearing, the vocational expert testified that the three semi-skilled positions identified—telephone sales, maintenance dispatcher, and appointment clerk—would be "entry level unskilled" positions for which "the skills are acquired while on the job." (AR 2914.) But critical here, the vocational expert did not express an opinion as to the particular type of skills that an individual would need to acquire to perform these positions. Nor did the vocational expert testify as to whether Plaintiff, himself, was capable of acquiring those skills on the job, given his previous work history, as well as his present functional limitations. The omission of such testimony regarding available transferable skills left the ALJ without any evidence as to either

the skills required for the positions identified, or Plaintiff's ability to perform them. Further, in her written decision, the ALJ expressly declined to address the issue of transferable skills, concluding that the "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (AR 2866 ¶ 9.) However, as noted above, the ALJ cannot rely solely on the grids to find that a claimant is not disabled. *Trimiar*, 966 F.2d at 1333.

Accordingly, it is clear to the court that the ALJ had a duty to assess Plaintiff's skills, if any, acquired from past relevant work that would allow him to perform the semi-skilled jobs identified at step five. "It only makes sense that in order for an ALJ to consider semi-skilled positions at step five, an ALJ must first find that a claimant has transferable skills that will enable him or her to perform more than unskilled work." *Cantu v. Colvin*, No. 16-cv-1370-WJM, 2017 WL 1488313, at *3 (D. Colo. Apr. 26, 2017); *see Steward v. Barnhart*, 44 F. App'x 151, 152 (9th Cir. 2002) ("[A]n applicant must possess transferable skills from previous work in order to perform SV-3 jobs."); *Macarages v. Astrue*, No. CIV-09-1270-D, 2010 WL 3749468, at *2-3 (W.D. Okla. Aug. 23, 2010) (finding remand appropriate, where the ALJ concluded that the claimant could perform semi-skilled work without first finding that the claimant possessed transferable skills that would qualify him for a semi-skilled position). The ALJ failed to do so, and instead, concluded that Plaintiff could perform the three semi-skilled positions identified by the vocational expert, without any supporting evidence or findings as to Plaintiff's skills acquired from past work, or their utility for the identified positions. SSR 82-41, 1982 WL 31389, at *7 (Jan. 1, 1982). This amounts to reversible error.

The Commissioner argues, nevertheless, that the ALJ's step five determination should be affirmed for two reasons. (Doc. No. 16 at 15.) Defendant contends, first, that none of the semi-skilled positions identified by the vocational expert at the 2019 hearing actually require transferable skills. (*Id.* at 15-16.) The Commissioner emphasizes that all three of the jobs are "at the lower end" of the semi-skilled classification level, meaning that "transferability of skills is usually not found from this rather simple type of work." (*Id.* at 16 (quoting SSR 82-41, 1982 WL 31389, at \*3 (Jan. 1, 1982)).) As support for that argument, the Commissioner also points to the vocational expert's testimony, in which the vocational expert affirmed that the skills needed for all three of the identified positions could be "acquired while on the job." (*Id.*; *see* AR 2914.) The Commissioner argues, for those reasons, that "there was nothing improper in the ALJ finding that Plaintiff could work at three SVP 3 jobs without identifying transferable skills." (Doc. No. 16 at 16.) However, the Commissioner cites no authority for this position, which seems to improperly equate SVP-3 jobs, *i.e.,* semi-skilled work, with unskilled work. *See* 20 C.F.R. § 404.1568(b) (defining semi-skilled work as "work which needs some skills but does not require doing the more complex work duties"). Further, as Plaintiff points out, while the SSA regulations do state that "transferability of skills is usually not found" with respect to lower tier SVP-3 jobs, this does not mean that those positions do not require skills. (Doc. No. 17 at 4.) Rather, it means that the skills acquired in lower tier SVP-3 jobs usually do not transfer to other types of work, given that skills tend not to transfer up the skill ladder, and because jobs with skill levels lower than SVP-3 jobs, *i.e.,* SVP-1 or SVP-2, do not require any skills.

The Commissioner also argues that, even assuming that the ALJ did err in finding that Plaintiff could perform semi-skilled jobs without first identifying transferable skills, the error is

harmless, because Plaintiff "has more than a high school education, which would permit him to perform the jobs in question." (Doc. No. 16 at 16.) The Commissioner stresses that the SSA considers an individual with a high school education capable of performing "semi-skilled through skilled work." (*Id.* at 17 (citing 20 C.F.R. § 404.1564(b)(4)).) The Commissioner likewise points to the fact that, "as recently as March of 2016, Plaintiff was attending Pueblo Community College where he completed two semester[s] of school." (*Id.* at 17.) While the Commissioner's argument on this issue may be compelling, as Plaintiff correctly observes, it is an impermissible *post hoc* rationalization of the ALJ's decision. (Doc. No. 17 at 5.) Indeed, the ALJ did not examine Plaintiff's education in connection with his ability to perform certain types of work, or make any finding that his education accorded him the skills necessary to perform the three semi-skilled positions identified by the vocational expert. It is well-settled that the ALJ's decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2006); *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005); *see also Allen*, 357 F.3d at 1142 ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."). Therefore, because the ALJ did not discuss Plaintiff's education in connection with his ability to perform semi-skilled work in her written decision, Plaintiff's education cannot serve as the basis to justify the ALJ's step five determination.

Accordingly, because the ALJ failed to determine whether Plaintiff has any transferable skills from his past relevant work, the ALJ's step five determination is not supported by

substantial evidence. The Commissioner's final decision must, therefore, be reversed and remanded for further analysis.

## II. Remaining Arguments

Plaintiff raises additional arguments pertaining to the sufficiency of the underlying administrative proceedings. Because remand is warranted based on the ALJ's error at step five of the sequential evaluation process, there is no need to address Plaintiff's other arguments at this time. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) ("The ALJ's failure to develop the record affected the disability analysis as a whole and we therefore do not address the other issues Mr. Madrid raises on appeal."); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (remanding for reconsideration of medical evidence under the proper standards and declining to reach additional issues because "they may be affected by the ALJ's treatment of this case on remand"). Further, this case must be reversed and remanded for further fact-finding, rather than reversed for an immediate award of benefits, as requested by Plaintiff. *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (observing that outright reversal and remand for immediate award of benefits is appropriate, only when additional fact-finding would serve no useful purpose).

The court expresses no opinion as to the merit of Plaintiff's other arguments, and neither party should construe the court's silence as tacit approval, or disapproval, of how the evidence was considered. This Order should not be read to suggest the result that should be reached on remand; rather, upon remand, the parties and the ALJ are encouraged to fully consider the evidence and all issues raised anew. *See Kepler v. Chater*, 68 F.3d 387, 391-92 (10th Cir. 1995)

("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.").

### III. Conclusion

For the foregoing reasons, **IT IS ORDERED THAT**:

    (1) The Commissioner's final is decision is **REVERSED**.

    (2) This case is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Order.

    (3) Plaintiff is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED: March 31, 2022

BY THE COURT:

S. Kato Crews
United States Magistrate Judge